### GEIGER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1908.)

No. 768.

1. WORDS AND PHRASES—"GRAND INQUEST"—"INQUEST."

The term "grand inquest" has no other meaning than "grand jury"; the term "inquest" being used to indicate a body of men appointed by law to inquire concerning certain matters submitted to them.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p. 3634.]

2. INDICTMENT AND INFORMATION—FORM—INTRODUCTION.

An indictment returned into a federal court, reciting that the "grand inquest" of the United States of America, inquiring for the body of the district of Maryland, do on their oath present, etc., was not objectionable for failure to show that it was returned by a grand jury.

3. BANKS AND BANKING — NATIONAL BANKS — OFFICERS — DEFENSES—INDICTMENT.

Rev. St. U. S. § 5208 (U. S. Comp. St. 1901, p. 3497), declares that it shall be unlawful for any officer, clerk, or agent of any national banking association to certify any check drawn on the association, unless, etc.; and section 5209 declares that every president, director, cashier, teller, clerk, or agent of "any association, who embezzles," etc. Held, that an indictment, charging that defendant, being then and there the cashier of a certain "national banking association," to wit, etc., was not fatally defective for failure to allege that the national banking association specified was a national banking association organized under the laws of the United States.

4. SAME—DOING BUSINESS.

An indictment against a national bank cashier for an offense against the national banking law was not defective for failure to allege that the bank was doing business at the time the alleged offenses were committed.

5. SAME.

Where an indictment against a national bank cashier for willful misapplication of the bank's funds and willful abstraction thereof alleged that a customer of the bank, prior to the maturity of a note held by the bank against it, delivered a check to the bank to pay the note when due, which check came into defendant's possession as cashier, and that defendant cashed the check and converted the proceeds, the indictment was not fatally defective for failure to allege in words as to who was the payee of the check, nor to charge that the bank was still the owner of the note.

**6. SAME—NATURE OF OFFENSE.**
 Where a customer of a national banking association, whose note to the bank was about to mature, delivered a check to the bank to pay the note when due, and, the check coming into the hands of defendant as cashier of the bank, he cashed it and converted the proceeds, the loss was that of the bank, and defendant's offense a willful misapplication and abstraction of the bank's funds and credits, and not a mere breach of trust.

In Error to the District Court of the United States for the District of Maryland, at Baltimore.

George A. Solter and Albert S. J. Owens, for plaintiff in error.
John C. Rose, Dist. Atty., and Morris A. Soper, Asst. Dist. Atty.

Before PRITCHARD, Circuit Judge, and McDOWELL and DAYTON, District Judges.

McDOWELL, District Judge. The defendant below was indicted and convicted under section 5209, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3497). The indictment commences as follows:

"In the District Court of the United States for the District of Maryland.
"United States of America, District of Maryland—ss.:
"The grand inquest of the United States of America, inquiring for the body of the district of Maryland, do upon their oaths present that," etc.

The first objection to be considered is that the trial court overruled a motion to quash and a demurrer to the indictment, and refused to grant a motion in arrest of judgment, all of which were based on the fact that in the indictment the grand jury is described as the "grand inquest." If it be conceded that the body in question should in strictly technical language be described as the "grand jury," yet we are of opinion that the error, if such it can be called, is merely in a matter of form. The record preceding the indictment, reads:

"That heretofore. to wit, at a District Court of the United States for the District of Maryland. * * * William R. Hammond [and 22 others], good and lawful men of the district aforesaid, who, being impaneled, sworn, and charged to inquire for the United States of America, for the body of the district aforesaid, * * * present. * * *"

It is undeniable, as appears from this record, that the indictment was returned by the grand jury for the district of Maryland. The term "grand inquest" is not unknown, and has, so far as we are advised, no other meaning than "grand jury." In 1 Bouv. Dict. we find:

"Inquest. A body of men appointed by law to inquire into certain matters. * * * The grand jury is sometimes called the 'grand inquest.'"

In 1 Chitty's Crim. Law (5th Ed.) p. 306 (308), it is said:

"At common law it is perfectly clear that all persons serving upon the grand inquest must be good and lawful men. * * *"

In 2 Reeves Hist. Eng. Law, p. 461, and in Lesser's History of the Jury System, p. 97, will be found other illustrations of this use of the term "inquests." In the brief for the government in the case at bar it is said that the form here used has been in use in the district of Maryland for nearly or quite a century. From State v. Nixon,

18 Vt. 70, 46 Am. Dec. 135, 137, it appears that formerly the form used in the federal court in Virginia was:

"The grand inquest of the United States for the district of Virginia."

The defendant was found guilty as charged in counts 60, 62, 64, 65, 78, and 81, and was sentenced to five years' imprisonment under each count, the several terms to run concurrently.

The next objection we have to consider is based on the fact that in each of the counts in question the allegation is that:

"Said John W. H. Geiger, * * * being then and there the cashier of a certain national banking association, to wit, the Canton National Bank in Canton, Baltimore county, Maryland, unlawfully," etc.

It is argued that the language should have been "a national banking association organized under the laws of the United States." Section 5208, Rev. St., reads in part:

"It shall be unlawful for any officer, clerk, or agent of any national banking association to certify any check drawn upon the association unless," etc.

In section 5209, under which the indictment was drawn, we find the language:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles," etc.

Clearly it is the officer or agent of a national banking association alone who can violate this section, and the indictment consequently in effect uses the language of the statute. It seems to us hypercritical to contend that the language used in this indictment is wanting in certainty. As it is found in an indictment returned by the grand jury of a federal court in the United States of America, the words "national banking association" can reasonably mean nothing other than an association organized under the acts of Congress. If the language used in the indictment is objectionable, the form insisted upon by the learned counsel for the defendant would seem also open to the same objection. "Organized under the laws of the United States" would by the same process of reasoning leave it doubtful if the United States of America was intended.

It is further objected that there is no allegation that the bank was doing business at the time of the alleged offenses. We find no merit in this objection. Jewett v. U. S., 100 Fed. 832, 838, 41 C. C. A. 88, 53 L. R. A. 568.

The sixtieth count in the indictment reads as follows:

"And the grand inquest aforesaid, upon their oath aforesaid, do further present that the said John W. H. Geiger on the 12th day of July, in the year of our Lord 1906, in the state of Maryland and district aforesaid, being then and there the cashier of a certain national banking association, to wit, the Canton National Bank, in Canton, Baltimore county, Maryland, unlawfully and with intent then and there to injure and defraud the said association, and without the knowledge or consent of the said association, its board of directors, committees, or any of them, did willfully misapply certain of the moneys, funds, and credits of the said association for the use, benefit, and advantage of him, the said John W. H. Geiger, and for the use, benefit, and advantage of a person and persons other than the said association, whose names are to the grand inquest aforesaid unknown, to wit, moneys, funds, and credits to the amount of three thousand five hundred dollars, in the manner and by the

means following, that is to say: He, the said John W. H. Geiger, by virtue of his position as cashier of the said association, was then and there in possession of a check drawn upon the said association for the sum of three thousand five hundred dollars, dated July 9, 1906, and signed by the Taylor & McCoy Coal & Coke Company, a body corporate, which said check had theretofore come into his possession as such cashier, to be used in the payment, when due, of a promissory note for the sum of three thousand five hundred dollars, which had theretofore been discounted by the said association for the use and benefit of the said Taylor & McCoy Coal & Coke Company, and the said John W. H. Geiger did then and there deliver said check to the said association before the payment of said note was due, and by virtue of the power of control, direction, and management which as such cashier he then and there possessed over the moneys, funds, and credits of said association, did then and there pay and cause to be paid and delivered, in exchange for the said check, to himself and said other person and persons, moneys, funds, and credits of the said association in the sum of three thousand five hundred dollars, a more particular description of which moneys, funds, and credits is to the grand inquest aforesaid unknown, without the knowledge or consent of the said association, its board of directors, or committees, or any of them, and with the intent then and there to injure and defraud the said association, and that the repayment of the same to the said association was not then and there in any manner secured, all of which the said John W. H. Geiger then and there well knew, and that the said money, funds, and credits to the said amount were then and there willfully and unlawfully appropriated and converted to the use, benefit, and advantage of the said John W. H. Geiger and to said other person and persons—contrary to the form of the statute in such case made and provided, and against the peace, government, and dignity of the United States."

Count 62 is in the same language, except that it charges willful abstraction.

Counsel for the defendant urges the following as defects in these two counts:

"The counts are defective because: (a) It is not alleged, in the description of the means and method of the offense, that the check was the property of the banking association, or that the bank was the owner or holder of the promissory note which the check was to pay, or that the check was to be paid to the association. (b) That if the check was delivered to Geiger 'as cashier' to pay a note which would subsequently fall due, such a duty was not one which would come within the scope of the duties of the cashier, and the cashier, therefore, was the agent of the person who had delivered the check to him. (c) That if the check was the property of the bank, and delivered to Geiger as the cashier thereof, the cashing of the same and conversion by him of the proceeds of the check was embezzlement, and not abstraction or misapplication."

We cannot perceive that it was necessary to allege that the bank was still the owner of the note. If it had been rediscounted, the cashing of the check and the misapplication and abstraction of the proceeds of the check would constitute the offenses charged in the two counts in question, if the loss fell on the bank, and not on the drawer of the check. It also was unnecessary to make allegation in words as to the payee of the check. It is alleged that the check—and, by necessary intendment, the power to cash it with apparent regularity—came into Geiger's possession "by virtue of his position as cashier, to be used in the payment, when due, of a promissory note. * * *" Under such allegation, although the check may have been payable to bearer or to Geiger, it seems to us necessary to consider that Geiger obtained the check as agent of the bank, that the check was in possession of the bank, and that the loss growing out of his misapplication of the pro-

ceeds was the loss of the bank. It was consequently the money of the bank that the defendant illegally abstracted and misapplied. The facts alleged cannot constitute a mere breach of trust by Geiger as agent of the maker of the check, because it is alleged that "as cashier" he obtained possession of the check. If, instead of giving the cashier a check, the Taylor & McCoy Company had on the day in question taken to the bank $3,500 in currency and had handed it to Geiger "as cashier," to be specially deposited for the payment of the note in question when due, it is clear that the loss resulting from an abstraction and misapplication of such fund by Geiger would fall on the bank; and such transaction does not seem to us to differ in legal effect and consequence from the transaction alleged. Whether or not the illegal taking of the money constituted embezzlement is immaterial. Under the allegations Geiger illegally abstracted and misapplied the money.

The remaining assignments of error are based on demurrers to the remaining counts upon which the defendant was found guilty. We think it unnecessary to consider the remaining assignments. The defendant was sentenced to only five years in jail, which is the minimum punishment under section 5209, Rev. St.

The judgment below will be affirmed.