## UNITED STATES v. JENKS et al.

(District Court, E. D. Pennsylvania.  April 9, 1920.)

No. 49.

1. **Banks and banking ☞256(3)—Liberty Bonds in federal reserve bank for exchange are "funds of bank," as affecting embezzlement.**

   Liberty Bonds, delivered by the United States to a federal reserve bank for exchange with holders of a prior issue, *held* to constitute "funds of the bank," within the meaning of Rev. St. § 5209, as amended and extended to federal reserve banks by Act Sept. 26, 1918, § 7 (Comp. St. Ann. Supp. 1919, § 9772), as between the bank and employés charged with conspiracy to embezzle such bonds.

2. **Banks and banking ☞256(3)—Intention to replace funds not a defense to embezzlement charge.**

   It is not a defense to a charge of embezzlement of bonds from a federal reserve bank that defendants intended to use the proceeds to purchase other bonds of equal value to the bank to replace those taken.

3. **Conspiracy ☞45—Deposits and checks held admissible to show division of proceeds of embezzlement.**

   On trial of two defendants, charged with conspiracy to embezzle bonds from a bank, evidence showing deposits by one defendant in another bank of checks of the brokerage firm which sold the bonds, and payment of checks drawn by the depositor to his codefendant, aggregating one-half the amount of such deposits, *held* competent to establish division of the proceeds of the embezzlement, and as evidence of the conspiracy.

Criminal prosecution by the United States against Charles N. Jenks and Elmer E. Patton.  On motions by defendants for new trial and in arrest of judgment.  Denied.

See, also, 258 Fed. 763.

Charles D. McAvoy, U. S. Atty., and T. Henry Walnut, Asst. U. S. Atty., both of Philadelphia, Pa.

Grover C. Ladner and William A. Gray, both of Philadelphia, Pa., for defendants.

THOMPSON, District Judge.  The defendants were convicted under an indictment charging them as employés of the Federal Reserve Bank of Philadelphia with conspiring together to commit the offenses under section 5209, Revised Statutes (as amended by Act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772], extending the provisions of that section to federal reserve banks), of embezzling, abstracting, and willfully misapplying the funds and credits of the bank, and of making false entries, with intent to injure and defraud the bank.  The first count of the indictment, which is the one upon which conviction was had, charges conspiracy that Patton should embezzle, that Jenks and Patton should abstract, and that Jenks and Patton should misapply, the funds and credits of the bank, and that Patton should make false entries in certain books, reports, and statements of the bank.  The facts charged in the indictment are briefly as follows:

The bank had received and had in its possession $85,000 4¼%
coupon bonds of the First Liberty Loan converted (hereinafter re-
ferred to as the 4¼'s), which it had received from the Treasury De-
partment to be held by the bank for conversion under the terms of
a circular issued by the Treasury Department for the purpose of car-
rying out the privilege extended to holders of 4% convertible gold
bonds of 1932–47 of the First Liberty Loan converted (hereinafter
referred to as the 4's), to have them converted into equal face amount
of the 4¼'s. Patton was an employé of the Federal Reserve Bank,
employed in the Liberty Bond department, and had received into his
possession the $85,000 4¼'s above described. Jenks was also an em-
ployé of the Federal Reserve Bank in the Liberty Bond department.

It is charged that the defendants conspired together that Patton
should embezzle the bonds and together with Jenks abstract them
from the funds and credits of the banks, and that Patton and Jenks
should sell them, collect the proceeds of the sale, and, in order to de-
ceive the officers of the bank, the Comptroller of the Currency, and the
bank examiner, that Patton should make false entries indicating that
the bonds had been delivered to the West End Trust Company. Overt
acts charged are that Jenks delivered the bonds to a brokerage firm;
that the defendants filed with the bank papers purporting to be re-
ceipts of the West End Trust Company for the bonds; that Patton
made an entry in the registry of delivery indicating the delivery of the
bonds to the West End Trust Company.

There was evidence to support the charges in the bill of indictment,
and evidence to show that with the proceeds of the 4¼'s sold the
defendants purchased 4's, which were convertible into 4¼'s and placed
them in the Federal Reserve Bank. There was also evidence to show
deposits by Jenks of the difference between the proceeds of the 4¼'s
and the cost of the 4's in his bank account, and to show the payment
out of his bank account to Patton of one-half of such difference, and
the deposit of that amount in the bank account of the other defendant.

[1] It is contended that a verdict should have been directed for
the defendants, upon the ground that the bonds alleged to have been
embezzled did not constitute part of the funds and credits of the Fed-
eral Reserve Bank. The arrangement under which the bonds were
deposited in the bank constituted a bailment, under which the bank was
to render the service to the United States of delivering the 4¼'s in
exchange for the 4's, and it was accountable to the Treasury Depart-
ment for carrying out its part of the transaction.

The evidence showed Patton's employment was such that the bonds
came into his possession, and in taking them out he committed a
breach of the confidence or trust reposed in him by reason of his em-
ployment. It is not material that the bonds belonged to the United
States, or that the bank was responsible to it for the bonds, for be-
tween the defendants and the bank the bonds belonged to the bank,
and a wrongful appropriation of the bonds was an appropriation of
the funds of the bank, and the defendants cannot be heard to say in
their defense that the bonds which their principal authorized them to
deliver to holders of the 4's for the purpose of conversion belonged to

any one but the principal. Spencer v. United States, 169 Fed. 562, 95 C. C. A. 60; Campbell v. State, 35 Ohio St. 70; State v. Hoshor, 26 Wash. 643, 67 Pac. 386.

In the case of United States v. U. S. Brokerage & Trading Co. (D. C.) 262 Fed. 459, an indictment for embezzlement was recently sustained by Judge Learned Hand, where the property embezzled consisted of the proceeds of estray railroad freight sold by the defendant by order of the government while the railroad was under federal control. The indictment was demurred to upon the ground that the government had no such title as gave it the right to sell the freight and that it was not the owner of the goods. The demurrer was overruled. I agree with what Judge Hand said in his opinion:

"While embezzlement differs from larceny precisely in this, that it does not depend upon a violation of possession, nevertheless a person lawfully in possession may transfer that possession to another as a fiduciary, and the latter, having received possession in that way and betrayed the trust, will not be heard to question the ownership of the immediate victim. Rex v. Beacall, 1 Car. & P. 310, 454."

Under the facts in the present case, as between its employés and the bank, the bonds were the funds of the bank.

[2] As to the defendants' contention that the evidence was not sufficient for the jury to find an intent to injure and defraud the bank, the evidence showed that the bonds were secretly taken away and sold and the proceeds converted to the defendants' own use. That they intended to purchase 4's of an equivalent amount and replace them in the bank is immaterial. The natural and probable consequences of the act caused a presumption of intent to injure and defraud, and the charge left the question to the jury. United States v. Taintor, Fed. Cas. No. 16,428; Pearce v. United States, 192 Fed. 561, 113 C. C. A. 33; United States v. Harper (C. C.) 33 Fed. 471.

Reasons are assigned relating to testimony admitted as to proof of the handwriting of the defendants. One of the usual methods of proving handwriting is through the testimony of nonexpert witnesses, who have seen the defendant write and who testify as to their familiarity with his handwriting. The testimony of the witnesses Davis and McLaughlin was, I think, properly admitted for the consideration of the jury. Other reasons relate to the admission in evidence of book entries, papers, and statements of certain trust companies.

[3] In order to prove the division of the alleged profits of the transaction, the district attorney called the head bookkeeper of the Republic Trust Company, who testified that C. N. Jenks had a deposit account with that company. He identified two checks of the brokerage firm which conducted the transaction, dated January 15, 1919, for $1,589.72, and January 18, 1919, for $1,170.04 drawn to the order of C. N. Jenks and identified them as having been deposited with the Republic Trust Company, and produced the original entries in the deposit account of C. N. Jenks. He testified that the entries were made by one of the bookkeepers under his direction, and then showed charges against Jenks' account under date of January 27th, for $794.86,

and on January 30th, for $585.02, respectively. The bookkeeper was called, who testified that she made the entries.

The assistant teller of the Security Trust Company was called, and he produced a deposit slip of Patton, showing the deposit of a check on the Republic Trust Company, in which Jenks kept his account, in the amount of $585.02, corresponding with the amount of the charge against Jenks' account in that company of January 30th.

D. V. McLaughlin testified to his familiarity with the handwriting of Patton and identified the handwriting on a signature card in the Western Savings Fund Society as that of Patton.

The assistant receiving teller of the Western Savings Fund Society testified that he kept a record of deposits made by depositors, and produced the record so kept for January 24, 1919. He produced a deposit slip, and identified the handwriting as that of a receiving teller, who had since died, the slip showing a deposit of $794.86 under date of January 24th to the account of Patton, corresponding with the amount of the charge against Jenks of January 27th in his Republic Trust Company account.

The amount of the alleged deposits by Patton equaled one-half of the amount of the checks received by Jenks from the brokerage firm. I think the documentary evidence was sufficiently proven, and, when proven, was admissible as part of the res gestæ, connected with proof of the deposits made by the two defendants in their accounts, to show the division of the spoils. I see no reason to disturb the verdict on account of the admission of evidence or of matter contained in the charge.

The motion for a new trial and the motion in arrest of judgment are therefore denied.