## BISHOP v. UNITED STATES (two cases).

(Circuit Court of Appeals, Eighth Circuit. November 29, 1926.)

Nos. 7493, 7517.

1. **Banks and banking** ☞257(1)—**Indictment against officers of national bank for criminal misapplication of its funds held good against demurrer.**

An indictment charging officers of a national bank with knowingly, willfully, unlawfully, feloniously, and fraudulently misapplying funds of the bank, being the proceeds of notes deposited with the bank for collection, *held* to sufficiently negative consent of the owners of the notes to the alleged misapplication.

2. **Banks and banking** ☞256(3)—**Proceeds of collections are "funds" of the bank, as respects misapplication (Comp. St. § 9772).**

Money received by a national bank in payment of notes it holds for collection, while remaining in its hands, constitutes "funds" of the bank, within Rev. St. § 5209 (Comp. St. § 9772), making it an offense for an officer or employee to embezzle or misapply such funds.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fund.]

3. **Criminal law** ☞1167(1)—**Variance is not fatal, unless prejudicial.**

A variance between allegations in an indictment and the proof is not fatal, unless material and prejudicial.

---

4. **Criminal law** ☞814(1)—**Instruction as to facts warranting conviction must be limited to facts alleged.**

Instruction as to what evidence would warrant conviction must be limited to facts alleged in the indictment.

5. **Criminal law** ☞1172(1)—**Appellate court cannot reform misleading instruction.**

An appellate court cannot reform a statement in an instruction, made in a manner plainly tending to mislead or confuse the jury, though not so intended.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Criminal prosecution by the United States against Will F. Bishop and Frank L. Bishop. Judgment of conviction and defendants separately bring error. Reversed and remanded.

See, also, 16 F.(2d) 410.

Kenneth W. Robinson and Harry S. Silverstein, both of Denver, Colo. (Philip S. Van Cise, of Denver, Colo., on the brief), for plaintiff in error Will F. Bishop.

S. Harrison White, of Denver, Colo., for plaintiff in error Frank L. Bishop.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (George Stephan, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before KENYON, Circuit Judge, and SCOTT and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. Plaintiffs in error (hereafter termed defendants) were convicted in the United States District Court for the District of Colorado upon the second and fourth counts of an indictment charging violation of section 5209, Rev. Stat. of the United States (Comp. Stat. § 9772), by misapplication of funds of the Globe National Bank of Denver. The second count of the indictment recited that defendants were officers and directors of the Globe National Bank of Denver, and that on the 14th day of September, 1924, they unlawfully, willfully, and fraudulently misapplied, not for the use, benefit, or advantage of the bank, certain moneys, funds, and credits to the use, benefit, and advantage of themselves and one W. G. Birkhauser and with the intent to injure and defraud said bank, knowingly, willfully, and fraudulently applied the sum of $1,000 of the moneys, funds, and credits of said bank, being the proceeds of two bonds left by one Joseph T. Russell with said member bank for collection, to the payment of a certain promissory note in the sum of $11,000 held by said bank, which had been thereto-

fore executed by W. G. Birkhauser in favor of said bank, and which note was in truth and in fact the obligation of defendants; that said promissory note obligation, by virtue of this and other payments made thereon, was canceled, surrendered, and delivered to said Birkhauser as fully paid, and that, by reason of said payment and application of the moneys, funds, and credits of the bank made on said promissory note obligation, said sum of $1,000 was wholly lost to said member bank. The fourth count charges further misapplication of bank funds, viz. that the Globe National Bank held for collection certain notes executed by the Rocky Mountain Osteopathic Hospital Association. Some of these notes had been sold by the bank to various parties; $2,500 worth of the notes were alleged to be the property of Eva F. Benedict; one note for $500 was alleged to be the property of Thomas and Mary Mee. It is charged that defendants on September 14, 1925, "then and there, with intent on their part then and there to injure and defraud said member bank," willfully, unlawfully, and fraudulently applied the money collected upon these notes by the bank as part payment upon a certain $14,000 promissory note, which had theretofore been executed by R. C. Bradshaw in favor of said bank as an accommodation for the defendants; that by reason of such payment and others the said note of Bradshaw was canceled, surrendered, and delivered to him as fully paid, and it is alleged that the bank thereby lost the said $3,000.

The facts as disclosed by the evidence seem to be as follows:

In January, 1925, Frank L. Bishop, with certain associates, purchased from Mr. Staley, then president of the Globe National Bank, and his associates, a controlling interest in the bank. To bring this about he obtained two accommodation notes, one in the sum of $11,000, signed by W. G. Birkhauser, and one in the amount of $14,000, signed by R. C. Bradshaw, who was the father-in-law of defendant Will F. Bishop. These notes purported to be collateralized by negotiable securities. Defendant Will F. Bishop became vice president of the Globe National Bank in January, 1925, after these notes were given. Later defendant Frank L. Bishop became the vice chairman of its board of directors. The Globe National Bank was later merged with the Home Savings & Merchants Bank. Certain promissory notes executed by the Rocky Mountain Osteopathic Hospital Association were held for collection by the bank. $2,500 of these notes, which had been sold by the bank to Eva F. Bene-

dict, and one of $5,000, which had been sold to Thomas and Mary Mee, were paid by the Hospital Association to the bank, and the money received therefor was applied on the Bradshaw accommodation note. Joseph T. Russell, a customer of the bank, owned two $500 bonds issued by the city of Denver. He turned these over to the bank for collection. The city treasurer made a check payable to the bank for the amount due, viz. $1,030. Russell took the check, saw it was payable to the bank, gave it to defendant Frank L. Bishop, and asked him to purchase for him a real estate first mortgage. Frank L. Bishop took the check, and had the bank issue in lieu thereof a cashier's check for $1,000, payable to "ourselves." This check was on September 14, 1925, given to the discount teller by defendant Will F. Bishop who directed him to apply the same as part payment on the Birkhauser note.

As to the Bradshaw note, the $3,000 collected upon the Benedict and Mee notes was applied thereon at the same time. On September 18, 1925, the day before the bank closed, the collateral on the Bradshaw and Birkhauser notes was sold. The notes were marked paid, and delivered to defendant Will F. Bishop. Bradshaw and Birkhauser received absolutely nothing on the notes given to the bank. They were purely accommodation paper, and evidently made for the benefit of the defendants. The evidence shows that the money collected for Russell, the Mees, and Benedict went into the general funds of the bank. Many questions are raised by plaintiffs in error. We take them up in the order which seems to us logical.

[1, 2] Demurrers were filed to the indictment by each of the defendants, which were sustained as to the first and third counts, and overruled as to the second and fourth. The second count refers to what may be termed "the Birkhauser transaction," and the fourth count to what may be termed "the Bradshaw transaction." The demurrers challenged these two counts, on the ground that the indictment did not charge the alleged misapplications were without the consent of Russell, the Mees, and Eva F. Benedict; that the money collected by the bank belonged to these individuals; and that the indictment shows on its face that the bank obtained an advantage from the application of the money rather than a loss. We think the court committed no error in overruling the demurrers to these two counts. The counts charge that the alleged misapplications were knowingly, willfully, unlawfully, feloniously, and fraudulently made, which negatives any idea that the claimed misapplication of the funds could

have been made with the consent of Russell, the Mees, or Eva F. Benedict.

Nor do we think there is any merit in the proposition urged that the money collected did not become part of the bank funds. These counts allege that the notes and bonds had been left with the bank for collection. The moneys were collected and remained in the bank for a time. Clearly, as between these defendants and the bank, they became bank funds. Spencer v. United States (C. C. A.) 169 F. 562; United States v. Jenks et al. (D. C.) 264 F. 697; Donegan v. United States (C. C. A.) 296 F. 843; Williams v. United States (C. C. A.) 275 F. 129. If the defendants did on the 14th day of September, 1925, direct the application of the money collected on the Russell, Mees, and Benedict notes to the payment of the Birkhauser and Bradshaw notes, they were directing, as far as they were concerned, the application of money which constituted bank funds to the payment of notes which had been taken for their benefit. We are satisfied that each of these two counts of the indictment contains every element of the offense intended to be charged, and that they are not subject to the objections raised by the demurrer. Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830; Cochran & Sayre v. United States, 157 U. S. 286, 15 S. Ct. 628, 39 L. Ed. 704.

Defendants raise an exceedingly technical question of variance between the allegations of the indictment and the proof as to each of the two counts; it being claimed that the second count charged that the $1,000 which the defendants were alleged to have misapplied with intent to defraud the bank were moneys "then and there being the proceeds of two bonds theretofore left by one Joseph T. Russell with said member bank for collection," and that the proof did not bear out this specification. Russell left the bonds at the bank for collection. The bank sent a representative to the city treasurer and received a check for $1,030, payable to the Globe National Bank. An employee of the bank turned the check over to Russell, who, discovering the check was not indorsed, took the same to Frank L. Bishop, and told him to indorse it, and buy him a note for $1,000 "on some real estate first mortgage." The money was not turned over to Russell by the bank or by Bishop. Russell was not dealing with defendant Bishop as an individual. He was dealing with him as an officer and agent of the bank, and Russell never received the proceeds of these bonds from the bank.

The objection that there is a variance as to the fourth count is equally technical. The amount collected on the Benedict and Mees notes went into the bank, and remained there until the cancellation of the cashier's checks. The evidence shows that Eva F. Benedict had become deceased before the indictment in this case was returned, and that defendant Frank L. Bishop was administrator of her estate. The money collected on the Benedict note, as far as this record shows, was not paid over to Frank L. Bishop as administrator of the Eva F. Benedict estate, either by the bank or by the Hospital Association, and the record fails to show that defendant Frank L. Bishop ever received the money as administrator of the estate.

[3] It is the rule that a variance between allegations in an indictment and the proof is not fatal, unless it be a material and prejudicial variance. 14 R. C. L. p. 206, § 50. We think the correct doctrine is that stated in Meyers v. United States (C. C. A.) 3 F.(2d) 379, 380, as follows: "The purpose of the rule which requires that the allegations and the proofs must correspond is that the opposite party may be fairly apprised of the specific nature of the questions involved in the issue. No variance ought ever to be regarded as material, where the allegations and proof substantially correspond, or where the variance was not of a character that could have misled the defendant on trial." In the slight variance of proof, there was nothing prejudicial in any way to defendants, and the claimed variances are not at all vital.

The court, with reference to the collateral which had been furnished to the bank with the Birkhauser and Bradshaw notes, said in its instructions: "Then there is also evidence that some collateral was put up on one or more of these notes; in other words, that collateral was put into the bank by one or more of the defendants, and held there against one of these notes. Then it appears that later they took that collateral out and sold it. Now, if you find that that collateral belonged to the bank, or the bank was responsible for it to the true owners, and the defendants sold that and misapplied the proceeds, then, of course, you will be justified in finding them guilty." This was duly excepted to and is assigned as error.

[4] The jury were told by this instruction that, if defendants sold the collateral which had been furnished with the notes and misapplied the proceeds, "then, of course, you will be justified in finding them guilty." There is no charge in the indictment concerning the collateral security and its sale. This instruction, therefore, standing alone, advised the jury that defendants would be guilty if they had performed certain acts

which are in no way charged against them in the indictment. Bluntly stated, it permitted conviction of defendants for an offense for which they were not on trial. It needs no citation of authorities to show the erroneous nature of this instruction. An accused person is entitled to be informed by the indictment or information of the nature of the crime charged. Evidence had been introduced tending to show that defendant Frank L. Bishop had misappropriated certain securities belonging to the Royal Arch Chapter of Masons, he being Grand or State Treasurer thereof, had used these securities as collateral to the Birkhauser and Bradshaw notes, and then sold the same shortly before the bank closed its doors. The government in its brief says little concerning this alleged error, but claims that the entire charge of the jury clearly told them that the jury must find the defendants guilty, if at all, solely by reason of the misapplication of the $1,000 arising out of the Russell transaction and the $3,000 arising out of the Mee and Benedict transactions.

The part of the court's charge relied upon as an answer to this claim of plaintiffs in error is as follows: "Now, these, gentlemen, are the instructions which will govern you in the decision of this case. You must bear in mind that the defendants are on trial, charged with the specific misapplication of bank funds as stated in the two counts in the indictment, and nothing else. It may have been brought out in the case that they were guilty of questionable acts in other transactions. That must not influence you, because they are not on trial here on any other charges, such as violation of trust in respect to the Masonic Association funds, or any of the other transactions, although those transactions do bear to some extent and are some evidence on the intent of the transactions charged in the two counts of the indictment; that is, they are entitled to be tried only upon the charges named in the indictment, and upon those alone, and as to whether they are guilty of those or not is the sole question before you." The court in this instruction did tell the jury that defendants were not on trial for the violation of any trust in respect to the Masonic Association funds. The court did not tell the jury, however, that defendants could not be convicted in this case

for the selling of the collateral. This instruction did not cure the error in the instruction before referred to.

[5] We are satisfied that the court did not intend by the instruction complained of to give to it the effect which plaintiffs in error now claim; but we are not permitted, as said in Revis v. United States (C. C. A.) 9 F.(2d) 496, 498, "to reform the statements of the court, when made in such manner as tend to produce confusion and a mistaken idea in the minds of the jury." Certainly a jury, having been told that they could convict defendants, if they had taken the collateral belonging to the bank, or for which the bank was responsible to the true owners, and sold the same and misapplied the proceeds, would not understand from the other instruction as to violation of trust in respect to the Masonic Association funds that the question of the sale of the collateral was eliminated from the case. The erroneous instruction was clearly prejudicial, and requires a reversal of the judgments entered. Parties cannot be convicted under an indictment for acts which are not charged against them therein.

Errors are urged in regard to the admission of a large amount of evidence as to the nature, character, and derivation of the collateral of the Bradshaw and Birkhauser notes. This evidence showed that defendant Frank L. Bishop had misappropriated in January, 1925, property of the Royal Arch Chapter of Masons, of which he was treasurer, and tended to show the commission of a separate and distinct offense. The government in argument justifies the admission of this evidence on the theory that it was drawn out by counsel for D. H. Staley, one of the defendants, in cross-examination of the witness Fred. W. Boot, Jr., and hence that defendants cannot complain thereof. As defendant Staley has now passed out of the case by directed verdict, this question will probably not arise in any subsequent trial of the case, and therefore it is unnecessary to consider it. We think this true, also, as to the other alleged errors presented.

For the error in the instruction hereinbefore pointed out, the judgment in this case as to each of the defendants must be reversed. It is so ordered, and the case is remanded for further proceeding.

Reversed and remanded.