**UNITED STATES of America**

v.

**Sidney L. TAYLOR, Appellant.**

No. 88–3067.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1989.

Decided Feb. 14, 1989.

Patrick M. Donahue, appointed by the Court, Annapolis, Md., for appellant.

Michael Dreeben, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before SILBERMAN, WILLIAMS and SENTELLE, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

A jury found Sidney L. Taylor, formerly a branch manager of Meritor Savings Bank, guilty of embezzling, abstracting or purloining $22,400 from a customer's account, in violation of 18 U.S.C. § 657 (1982).[1] He is appealing his convictions on the ground that the prosecution failed to prove the necessary elements of embezzlement. Viewing the evidence in the light most favorable to the prosecution, as we must, see *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *id.* We affirm.

On July 29, 1986 Emma Dade, an 83–year–old widow, visited Meritor Savings, a

---

1. 18 U.S.C. § 657 states:

Whoever, being an officer, agent or employee of ... any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation ... embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount or value embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

federally insured savings bank, to discuss changes she wished to make in an account she held jointly with her brother. She approached Taylor, the branch manager, whom she knew only through her visits to the bank, and told him that she wanted to remove her brother's name from the account because he had recently entered a nursing home. Instead, she wished the account arranged so that the money would go to her church after her death to be used "to feed the hungry and the poor." Trial Transcript, January 13, 1988, Testimony of Emma Dade, at 80.

Taylor asked Mrs. Dade if she wanted him to serve as "administrator" for such an arrangement. *Id.* at 10. Mrs. Dade decided to accept his offer because "he looked like an honest man working in the bank." *Id.* Taylor then prepared a joint account form with right of survivorship bearing his and Mrs. Dade's names and transferred $29,805.07 from her old account into the new one. Taylor told her that his name appeared on the passbook because he was her administrator. *Id.* at 23–24.

The signature card for the new account, on which Taylor wrote both names, described the ownership arrangement as follows:

> As joint tenants with the right of survivorship and not as tenants in common and not as tenants by the entirety, the undersigned hereby apply for a savings account in MERITOR SAVINGS BANK, FSB.... [The savings bank is] hereby authorized to act without further inquiry in accordance with writings bearing [the accompanying] signatures; it being understood and agreed that any one of the undersigned may act in all matters related to this savings account. The withdrawal or redemption value of this savings account or other rights relating thereto may be paid or delivered in whole or in part upon presentation of any one of the signatures written below.... Unless otherwise stated hereon, the ownership of said account is pro-rata.

Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment of Acquittal, Attachment 1. Mrs.

Dade signed the card without reading it and without any sort of explanation from Taylor.

Within two hours after creating the new joint account, Taylor had withdrawn $3,500; he made two more withdrawals totaling $5,000 in the next two weeks. At that point, Mrs. Dade returned to the bank because "something told me to go back to the bank and to have [Taylor's name] taken off my [pass]books." Testimony of Emma Dade, at 24. To relieve her anxiety, Taylor removed his name from the cover of her passbook with liquid paper. But he left the signature card unaltered and thus retained the ability to make withdrawals from the account without her consent. He continued to do so, to cover overdrafts in his own checking account, until Meritor Savings officials discovered and stopped him.

\* \* \*

Although the statute does not define the offense of embezzlement, a standard definition is that a defendant commits it "when, being in lawful possession of the property of another, he fraudulently appropriates or converts such property to his own use with the intent permanently to deprive." 3 Charles E. Torcia, *Wharton's Criminal Law* § 395 (14th ed. 1980); see also *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895) (defining the offense, in accordance with English common law, as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come").

In his brief to this court, Taylor attacks his convictions on the ground that as a joint tenant, he had an ownership right in the money he appropriated; thus, the property taken was not the "property of another." At oral argument, his counsel appeared to advance a slightly different argument, suggesting that any embezzlement was of Mrs. Dade's property, not the bank's; thus, he could not have violated 18 U.S.C. § 657, which prohibits only misappropriation from a specified class of financial transactions. We reject both arguments.

■ Taylor is correct in his general proposition that, because the property convert-

ed by an embezzler must belong to another, a defendant cannot embezzle property he owns jointly. 3 *Wharton's Criminal Law*, at § 419. But, even though the signature card described the account as a joint tenancy with right of survivorship, we do not believe that the transactions actually created such a relationship between Mrs. Dade and Taylor.

■ The District applies a presumption that "when a depositor creates a joint account for [herself] and another, without consideration, it is presumed to have been done for the convenience of the depositor." *Richardson v. District of Columbia*, 522 A.2d 1295, 1298 (D.C.1987) (quoting *Harrington v. Emmerman*, 186 F.2d 757, 761 (D.C.Cir.1950)).[2] The presumption is merely a judicial inference as to probable intent, and can be rebutted by extrinsic evidence that the depositor intended to make a gift of a present beneficial interest. See, e.g., *Richardson*, 522 A.2d at 1298; *Prather v. Hill*, 250 A.2d 690, 691–93 (D.C.1969). The overwhelming evidence at trial indicated that Mrs. Dade did not intend to give Taylor any beneficial interest in the funds: she did not read the card, was not told of its contents, never intended to establish a joint tenancy account, and allowed Taylor's name to be placed on the passbook only so that he could function as her "administrator."

■ The District cases cited above indicate that its courts would likely view the transaction as no more than a failed testamentary disposition. If instead Mrs. Dade created a joint tenancy, we believe that Taylor's interest as joint tenant would be only the bare legal interest of a trustee, either by express or constructive trust. Because others hold the beneficial interest, a trustee can be guilty of embezzlement if he misappropriates trust funds to which he holds legal title. See 3 *Wharton's Criminal Law*, at § 412.

A correctly charged jury—and neither at trial nor here has Taylor challenged the instructions—could readily find that Mrs. Dade created an express trust for the benefit of her church. No special words are required to create an express trust—the settlor need only manifest an "intention to impose upon [herself] or upon a transferee of the property equitable duties to deal with the property for the benefit of another person." 1 Austin Wakeman Scott, *The Law of Trusts* § 24 (3d ed.1967).

Even if Mrs. Dade's words and actions were not sufficient to create an express trust, a court could protect her interests (both in the property during her lifetime and in its disposition thereafter) by treating Taylor as a constructive trustee. Courts impose a constructive trust to redress the injustice that would otherwise occur when one person has fraudulently or wrongfully obtained the property of another. In *Gray v. Gray*, 412 A.2d 1208 (D.C. 1980), the court used this remedy in a joint tenancy situation similar to the situation before us. A mother and her daughter had purchased a home as joint tenants, using the proceeds of the mother's sale of a home evidently owned by her and her estranged husband. The trial court found that the mother intended that all of her nine children should have equal access to the home. The daughter was made a joint tenant on the deed so that her mother could more easily obtain financing. *Id.* at 1211. When the mother died, the daughter claimed to be the sole owner of the house by operation of the right of survivorship. The court rejected this characterization and affirmed the trial court's order imposing a constructive trust on the property for the benefit of the daughter, now the constructive trustee, and her eight siblings. *Id.* at 1209, 1211.

Thus there are several routes by which a jury could have rationally concluded that Taylor acquired no beneficial interest in the account. The nominal joint tenancy might

---

**2.** Although federal law defines the nature of this offense, federal courts look to state property laws in defining underlying concepts of ownership for the purpose of deciding whether a defendant violated a federal criminal statute aimed at protecting property. See, e.g., *Webb v.*

*United States,* 369 F.2d 530, 535 (5th Cir.1966) (permitting defendant to offer evidence of joint ownership under state law against charge of interstate transportation of stolen motor vehicle).

be viewed simply as an attempted testamentary disposition. Alternatively, either by way of express or constructive trust, one might view Mrs. Dade and Taylor as holding the legal title as trustees in joint tenancy, with an equitable life estate in Mrs. Dade and an equitable remainder in her church. Under any of these analyses, Taylor's defense that he could not embezzle from himself fails.

■ At oral argument, Taylor's counsel offered an alternative attack on the convictions, namely, that any funds embezzled did not belong to the bank. Of course the actual cash that he removed belonged to the bank (offset by a debt to Mrs. Dade) until the moment of his wrongful withdrawals. Moreover, and we think it critical here, Taylor's ability to make the withdrawals arose entirely from his position with the bank; it was that position that enabled him to prevail on Mrs. Dade to name him as joint holder of the account.

In *Groves v. United States*, 343 F.2d 850 (8th Cir.1965), the branch manager of a federal savings and loan association made a claim similar to Taylor's. He had received checks, payable to the association, on the strength of his promises that he could make special arrangements by which the depositor would receive a higher than usual rate of return. He instead simply deposited the checks to accounts in his own name. The manager argued that he had breached only his duty to the depositor. The court rejected the claim, as the manager's opportunity to convert the funds arose from his position in the association. Distilling the essence of that case and several others, the court wrote:

> [T]he opportunity to convert the funds arises by virtue of the defendant's position as the agent of a concern to which the public is invited to entrust its money, and it is in the integrity thereof which the public has confidence. In such instances the funds are delivered up to the agent solely for the purpose of performing a function within the apparent scope of his authority which would inure to the benefit of the drawer of the funds, if deposited in the Association as contemplated by fact and law.

*Id.* at 856. Clearly Taylor was not *less* guilty of embezzlement from the bank than Groves merely because he actually created an account bearing Mrs. Dade's name (as well as his own).

We do not reach the government's alternative argument that the conviction can be sustained because the evidence at trial showed that Taylor had "abstracted or purloined" the funds.

AFFIRMED.