**Juanita GRAY, Appellant,**

v.

**Bernard A. GRAY et al., Appellees.**

**No. 79–450.**

District of Columbia Court of Appeals.

Argued Feb. 19, 1980.

Decided March 28, 1980.

---

Joseph H. Schneider, Washington, D. C., for appellant.

John E. Scheuermann, Washington, D. C., for appellees.

Before NEBEKER, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant Juanita Gray is the surviving joint tenant on the deed to her family home. She appeals the trial court's order imposing a constructive trust on the property for the benefit of herself and her eight brothers and sisters, the appellees. Specifically, appellant challenges the sufficiency of the evidence supporting the court's conclusion that appellant, in accordance with the wishes of her mother (the deceased joint tenant), should be deemed a trustee for all the children, rather than sole owner of the property. She contends, alternatively, that even if the evidence otherwise were sufficient to support such a constructive trust, the so-called Dead Man's Statute, D.C.Code 1973, § 14–302(a), defeats her siblings' claim, since there is insufficient corroboration of their testimony as to the "transaction with, or action, declaration or admission of the deceased . . . person" who left the property, namely their mother, Maetee Gray. We disagree with both contentions and thus affirm the trial court's judgment.

I.

In December 1958, Maetee Gray and her daughter, Juanita Gray, purchased a home at 849 Xenia Street, S.E., as joint tenants, in order to provide a family residence for Maetee Gray and her nine children. The down payment came from the proceeds of the sale of the family's previous home plus contributions from at least two of the Gray children. Maetee Gray worked at several jobs to support her family, but her income was small. Juanita Gray's name, therefore, was included on the note and the deed in order to satisfy the lender that adequate income would be available to pay the loan. Throughout the course of the family's residence at Xenia Street until Maetee Gray's death in 1970, each of the Gray children understood that he or she would contribute whenever possible toward payment of the loan and other household expenses. Several of the children did so over the years, and three of them even substituted for their mother when she was too ill to work at one of her jobs.

Maetee Gray died intestate in 1970. The family home was the only item of value in her estate. The children held a family conference after the funeral to divide her burial expenses and remaining debts among them. They further agreed that the house should be occupied and maintained by a family member, if possible, and also discussed the matter of the names on the deed. Appellant, the surviving joint tenant, testified that she agreed at the conference to "give . . . some thought" to adding

the names of her eight brothers and sisters to the deed. Her three siblings who testified at trial, however, recalled that appellant "agreed" to convey a deed to her brothers and sisters in the names of all nine children. In any event, no change in the deed was made after the conference.

Except for a brief period in 1971, the Xenia Street property has been occupied by one or more of the Gray children since Maetee Gray's death. Patricia Gray Harrington has been making the loan payments since she moved back to the house in June 1971. Appellant, who had moved to Denver shortly after her mother's death, attempted to obtain the services of a real estate agent to manage the property in the summer of 1975. Her brother Bernard Gray objected. Appellant then informed him that she intended to sell the house and keep all the proceeds.

Appellant brought an action against Patricia Gray Harrington for possession of the property in the Landlord and Tenant Branch of Superior Court. In turn, the eight Gray children whose names do not appear on the deed brought a civil action against appellant, seeking imposition of a constructive trust on the property for the benefit of all nine children and specific performance of appellant's oral agreement to convey a deed to her brothers and sisters. The court granted a preliminary injunction to prevent sale of the property pending suit, and the two actions were consolidated for trial.

After a hearing the trial court, sitting without a jury, made findings of fact, including the following:

> Maetee Gray enjoyed a warm and loving relationship with all nine of her children and there was no reason why she would want to favor any one of her children over the others with respect to her estate.

> \*   \*   \*   \*   \*   \*

> The contributions of the children [to the household] varied over the years, and the total individual contributions are of an indeterminate amount. Some of the children gave more than others, but none

of these contributions were intended to give any child a greater share of their mother's estate than his or her siblings.

> It was the express wish of Maetee Gray that the Xenia Street property remain in the Gray family for the benefit of any of her children who desired to use it as a home.

The trial court rendered judgment for appellant's eight brothers and sisters, concluding that "as a matter of equity, the property . . . belonged solely to Maetee Gray, and that upon her death the equitable interest held by Maetee Gray passed intestate to her nine surviving children." The court ruled, therefore, that appellant held "bare legal title as a trustee, first to her mother, and upon her death, to her siblings." The court accordingly ordered appellant to convey a joint deed to herself and her brothers and sisters.

## II.

■ Appellant challenges the sufficiency of the evidence to support the imposition of a constructive trust. Because the case was tried before the court sitting without a jury, we may not set aside the judgment "except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code 1973, § 17–305(a). We conclude that the record contains ample evidence to support the trial court's order.

■ "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." 4A Powell on Real Property ¶ 594 at 48–3 and 48–4 (1979). *Accord, Hertz v. Klavin*, D.C. App., 374 A.2d 871, 873 (1977). This remedy "can be imposed wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest." *Osin v. Johnson*, 100 U.S.App.D.C. 230, 233, 243 F.2d 653, 656 (1957). Contrary to appellant's assertions, "[i]nequitable conduct short of fraud will cause equity to employ

this remedy." *Hertz, supra* at 873; *Harrington v. Emmerman*, 88 U.S.App.D.C. 23, 27 n.9, 186 F.2d 757, 761 n.9 (1950).

■ The testimony and exhibits at trial fully support the trial court's use of this equitable remedy. The parties agree that the events bearing on the original purchase of the property are critical to determining the family's understanding of the arrangement. Appellant's own testimony concerning these events was not consistent with her assertion that she is the sole owner of the property. As she testified, her name originally appeared on the deed in order to help her mother obtain financing. The trial court found, moreover, that appellant's name also had been included on the deed "to avoid possible claims by Maetee Gray's husband, Guss Gray, from whom she was separated; and because she was over twenty-one (21) years old and living at home."[1] The trial court appropriately concluded, therefore, that appellant had signed the deed as a matter of convenience, not because she had an interest in the property equal to her mother's.

Furthermore, appellant's conduct does not support her claim of sole ownership. She moved in and out of the house over the years and did not make payments on the loan when she was not living there. For five years after Maetee Gray's death, appellant took no action indicating her assertion of sole ownership, whereas her sister, Patricia Gray Harrington, lived in the house, maintained it, and made payments on the loan during that period.

■ As long as Maetee Gray lived, the house was open to her children, who moved in and out according to their needs and paid what they could toward household expenses. The three appellees who testified all understood that the house was to be used in the same manner after Maetee Gray's death. In a letter written to her brother Bernard, appellant expressed the same understanding: "Mama wanted the house to be kept so that the children will have a place to stay if they wanted to live there." Although a constructive trust may be impressed upon property irrespective of the intention of the parties, *see* Restatement of Restitution § 160, Comment a (1937), evidence that Maetee Gray intended such an equitable division of the property is a powerful factor favoring the court's conclusion.

■ The children acted in accordance with their mother's expectation. All four of the siblings who testified, including appellant, recalled that the children willingly contributed to home maintenance and carrying charges on the loan, as they were able. Even at Maetee Gray's death, the children split the bills for her burial and her debts. There was no evidence tending to refute the trial court's finding that "none of [the children's] contributions were intended to give any child a greater share of their mother's estate than his or her siblings."[2]

### III.

Appellant contends that even if all the evidence admitted at trial were sufficient to support the trial court's imposition of a constructive trust, the so-called Dead Man's Statute, D.C.Code 1973, § 14–302(a), defeats her siblings' claims.[3] Under that statute, if

---

1. The evidence does not clearly show whether appellant was the only child over 21 years of age living at home when the Xenia Street house was purchased. Bernard Gray testified that she was, but his testimony as to which of his siblings were living at home in 1958, and their ages, would permit a conclusion that Gussie Gray also was over 21 and living at Xenia Street.

2. We reject appellant's claim that the trial court should have ordered an accounting among the parties. The record does not reveal that appellant requested an accounting. Matters not raised at trial ordinarily are not considered on appeal. *See, e. g., Brown v. Collins*, 131 U.S.App.D.C. 68, 72, 402 F.2d 209, 213 (1968).

3. D.C.Code 1973, 14–302(a) provides in part:
   In a civil action against:
   \* \* \* \* \* \*
   (2) the committee, trustee, executor, administrator, heir, legatee, devisee, assignee, or other representative of a deceased person or of a person so incapable of testifying,

applicable, their testimony must be corroborated.

██ The Dead Man's Statute was intended to protect a person representing the deceased against potentially fraudulent suits based only on a claimant's word that the deceased was under an obligation to the claimant. *Duckett v. Duckett*, 77 U.S.App. D.C. 303, 305, 134 F.2d 527, 529 (1943) (interpreting predecessor statute).[4] A claimant's testimony is sufficient, however, if corroborating evidence, taken as a whole, tends to make his or her position substantially more credible. *Toliver v. Durham*, D.C.App., 240 A.2d 359, 360 (1968); *Pekofsky v. Blalock*, D.C.Mun.App., 175 A.2d 604, 605 (1961).

██ The discussion in Part II *supra* reveals that sufficient corroborating evidence was produced. The first source was the testimony of appellant herself. She did not offer any explanation as to why her name was on the deed that would support her assertion that she was to be the sole owner of the property after her mother's death. To the contrary, her own testimony regarding the conduct of the children in moving in and out of the house and in maintaining and supporting it reflects a different understanding—that the home was to be available in every respect to all of the children.

A second source of corroboration—documentary evidence—further supports the appellees' testimony. In a letter to her brother Bernard, appellant stated that their mother intended that the home should be kept for the use of all the children. Her brothers and sisters also produced checks and receipts indicating payments by children other than appellant on the home loan carrying charges and other household expenses. Accordingly, substantial corroborative evidence supports the appellees' testimony; the Dead Man's Statute does not affect the judgment.

## IV.

The trial court imposed a remedy on the parties that conformed with their own practice in dealing with the property over the years. We find no basis for reversing the judgment.[5]

*Affirmed.*

---

a judgment or decree may not be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with, or action, declaration or admission of, the deceased or incapable person. [Emphasis added.]

4. We apply the statute here because the trial court found that Juanita Gray held "bare legal title as a trustee, first to her mother, and upon her death, to her siblings" and because appellees do not dispute that the statute may be

invoked here. We do not consider whether Juanita Gray was actually a "trustee" or other "representative" of the deceased within the meaning of the statute. *See generally Nash v. Holzbeierlein & Sons, Inc.*, D.C.Mun.App., 68 A.2d 403 (1949); *Rosenschein v. Citron*, 83 U.S.App.D.C. 346, 169 F.2d 885 (1948).

5. Accordingly, we need not deal with appellant's argument that she is entitled to a judgment for possession against Patricia Gray Harrington in the Landlord and Tenant court suit.