**Bernard GRAY, Appellant,**

v.

**Ruby L. WASHINGTON,
et al., Appellees.**

**Nos. 91–CV–365, 92–CV–820.**

District of Columbia Court of Appeals.

Argued June 9, 1992.
Decided Sept. 8, 1992.

---

John W. Nields, for appellant.

Kenneth Shepherd filed a brief, for appellees.

Before ROGERS, Chief Judge, and STEADMAN and KING, Associate Judges.

KING, Associate Judge:

Appellant, Bernard Gray, an attorney, appeals Rule 11 sanctions imposed against him for filing a civil complaint in the Superior Court. Super.Ct.Civ.R. 11. The sole issue presented is whether the motions judge erred in ordering Rule 11 sanctions against appellant because he did not seek documentary evidence to support his clients' representations before filing a complaint seeking the imposition of a constructive trust on certain real property. We reverse.

## I.

This appeal arises out of an adult sibling dispute over the disposition of the family home. In December 1989, Mr. William Green and Ms. Rosetta Parkman, brother and sister, retained attorney Bernard Gray, appellant, to stop the imminent sale of the home in question. Mr. Green and Ms. Parkman had learned that their 99–year old mother, Mrs. Rosebud Green, the record owner, had placed the family residence on the market for sale. They believed that their sister, Ruby L. Washington ("Ms. Washington") had initiated the effort to sell the house.

Mr. Green and Ms. Parkman informed appellant that all of the siblings had made monetary contributions toward the purchase of the home: they made the down payment, contributed to the mortgage payments over the years, and contributed toward renovations and repairs. Each of the children at various times lived in the home. The mother, however, always retained legal title to the property.

Relying on these representations, appellant believed his clients had a strong case for the imposition of a constructive trust; a belief based on his personal experience with his own family home that had been owned by his mother. *See Gray v. Gray*, 412 A.2d 1208 (D.C.1980). On December 26, 1989, he filed a complaint on behalf of Mr. Green and Ms. Parkman seeking a court-imposed constructive trust on the family property and a temporary restraining order ("TRO") preventing sale *pendente lite*. The defendants named in the action were Mrs. Rosebud Green and two of plaintiffs' sisters, Ms. Washington and Ms. Ileon Pope.

On December 27, 1989, one day after the complaint was filed, the Superior Court granted the request for a TRO and prohibited the sale of the home. On January 4, 1990, the TRO was extended pending trial on the merits. On February 15, 1990, a

hearing on a motion for a permanent injunction was held before Judge Rufus G. King, III. Mr. Green and Ms. Parkman testified that during the 1940s they had brought their parents to Washington, D.C. from Alabama, and that they had paid for all the parents' expenses. After their parents arrived, all of the siblings played some role in the purchase of the family home by contributing to the down payment of the house, mortgage payments, and repairs.

Mrs. Rosebud Green, the mother, was also called to testify. However, she seemed to be unaware that the house was on the market for sale. Her testimony led the trial judge to raise a question about her mental capacity, and he suggested that a guardian *ad litem* be appointed to determine whether she was capable of making a decision to sell the home.

At the close of the proceeding, Judge Rufus King granted defendants' motion to dismiss the request for a permanent injunction, basing his ruling on the lack of documentary support of plaintiffs' testimony and the fact that the circumstances surrounding the purchase of the property occurred forty to fifty years earlier. A counterclaim remained unresolved and the case subsequently was transferred to Judge Kessler.

Seven months after the dismissal of the request for a permanent injunction, the defendants filed a motion seeking Rule 11 sanctions against Mr. Green, Ms. Parkman, and their attorney, appellant, requesting payment of the defendants' legal expenses.

A hearing on the sanctions motion was conducted on November 27, 1990, before Judge Kessler, who ordered appellant to pay $7,295.00 in attorney fees. This appeal followed.[1]

## II.

██ Rule 11 requires, where a party is represented by an attorney, that the attorney must sign all papers. It further provides that:

[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; [and] that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11 sanctions are not to be imposed simply because the allegations in the challenged pleading are found wanting. "[A] signer's failure to make a reasonable factual inquiry must be a flagrant one before sanctions are warranted." *US Sprint Communications Co. v. Kaczmarek*, 121 F.R.D. 414, 417 (D.Kan.1988); *See also Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483–84 (3d Cir.1987); *Morristown Daily Record, Inc. v. Graphic Communications*

1. Appellant filed a timely notice of appeal after the attorney fee award. *Gray v. Washington*, No 91–CV–365. In his brief and at oral argument before this court, he contended that the court had jurisdiction to hear the appeal under the collateral order doctrine even though the underlying proceeding had not been finally resolved. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). At oral argument, the court was informed that the counterclaim recently had been dismissed and that, accordingly, the case in the trial court was finally resolved. After oral argument, appellant filed a second notice of appeal which was timely with respect to the dismissal of the counterclaim. *Gray v. Washington*, No. 92–CV–820. The two appeals were consolidated by this court in an order issued August 4, 1992.

Appellant noted that the filing of the second notice of appeal was protective in nature and its filing did not constitute a waiver of his contention that a grant of attorney fees against counsel was itself an appealable order. We note that authorities are divided on this issue. *Compare Aetna Life Insurance Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1472–73 (9th Cir.1988) *with G.J.B. & Associates Inc., v. Singleton*, 913 F.2d 824, 827–29 (10th Cir.1990). Since timely notices of appeal were filed after both the entry of the order awarding fees and entry of the order finally terminating the case in the trial court, we have jurisdiction to consider appellant's challenge to the fee award under either one appeal or the other. We need not decide which appeal provides us with jurisdiction; however, in order to avoid confusion, we reverse and remand as to both.

*Union, Local 8N,* 832 F.2d 31, 32 n. 1 (3d Cir.1987); *Levy v. City of New York,* 726 F.Supp. 1446, 1456 (S.D.N.Y.1989). "[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986) (citations omitted). Our review is for abuse of discretion. *Williams v. Board of Trustees of Mt. Jezreel Baptist Church,* 589 A.2d 901, 911 (D.C.), *cert. denied,* — U.S. —, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991).

▮ Judge Kessler concluded that appellant had engaged in sanctionable behavior by filing a complaint based solely on the oral representation of his clients without the benefit of any independent corroboration. Specifically, the judge concluded that appellant had failed to "conduct reasonable inquiry to independently verify the client's allegations." At the conclusion of the sanctions hearing, the judge observed:

> It is clear that counsel for the plaintiff took his client's word as true and accurate and no other independent corroboration for these versions of events was either made or attempted to be made. This does not comply with the requirements of Rule 11 in this Court's view, and the motion will be granted.

Thus, the judge ruled that an attorney may not, under Rule 11, rely solely upon representations of a client when preparing a complaint. Instead counsel must always undertake some additional investigation in order to avoid sanctions. We do not agree.

Our rule is identical to the federal rule, and we have held that interpretations by the federal courts of an identical federal rule are persuasive authority for interpretation of the local rule. *Goldkind v. Snider Brothers., Inc.,* 467 A.2d 468, 472 (D.C. 1983). Federal courts interpreting FED. R.CIV.P. 11, have held that "[a]n attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable.'" *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1470 (2d Cir.1988); *see Greenberg v. Hilton International Co.,* 870 F.2d 926, 935 (2d Cir.1989); *see Kamen v. AT & T Co.,* 791 F.2d 1006, 1012 (2d Cir.1986). Thus, the dispositive factor is whether the clients' statements furnish a reasonable basis for reaching the conclusion that facts exist to support the claim. *See Calloway v. Marvel Entertainment Group, supra,* 854 F.2d at 1470. In *Kamen v. AT & T Co., supra,* the attorney sought an injunction for violations under the Rehabilitation Act of 1973, (29 USC § 794 (1983)). The Second Circuit reversed the imposition of sanctions under Rule 11 on the ground that the attorney's reliance on his client's statements was reasonable under the circumstances because the "relevant information was largely in the control of the defendants." 791 F.2d at 1012. Accordingly, we examine whether appellant could satisfy the reasonable inquiry requirement of Rule 11 by relying solely upon his clients' representations to him.

Mr. Green and Ms. Parkman informed appellant that they brought their parents to Washington, D.C. during the 1940s. When the parents first arrived, the children's earnings were the only income available for the purchase of the home. They also informed appellant that they had contributed to the down payment, assisted in the payment of mortgage payments, and helped pay for repairs. It was then understood that the house was to remain in the family. When Mr. Green and Ms. Parkman learned the house had been offered for sale, they were convinced that some prompt action needed to be taken to preserve their rights.

Appellant concluded, based on what his clients had told him, that they had a basis for the creation of a constructive trust on the family home based on *Gray v. Gray, supra,* 412 A.2d 1208, a case which involved appellant's own family. In *Gray,* the family residence had been purchased by the adult children. Title, however, was held only in the name of the mother and one adult child. Following the death of the mother, the sibling whose name was on the title attempted to assert sole ownership of the home. The other siblings brought suit to prevent the sale of the family property. They relied primarily on oral testimony,

although there was some documentation to corroborate their claim.[2]

After an evidentiary hearing, the trial court imposed a constructive trust on the property. This court affirmed stating "[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Gray v. Gray, supra*, 412 A.2d at 1210 (citation omitted). "This remedy 'can be imposed wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest.'" *Id.* at 1210.

Based on the factual similarities between *Gray* and the circumstances of this case, appellant was entitled to conclude that his clients' representations were "objectively reasonable." That being the case, appellant would have a "reasonable factual basis" for asserting a claim for the imposition of a constructive trust. Under the circumstances, the absence of written documentation from the clients does not require a contrary conclusion.[3]

The events underlying the claim had occurred over forty years earlier. In that time, receipts, cancelled checks, and other documents, if they ever existed, can be lost, discarded, or destroyed. Moreover, when dealing within the family, it is not necessarily expected that family members would have reason to anticipate that the preservation of such documentation would ever be necessary. Consequently, it is not at all surprising that any records that might have existed were not preserved or maintained for future litigation purposes. While the failure to provide documentation ultimately proved costly to Mr. Green and Ms. Parkman since the lack of documentary corroboration was the basis for the dismissal of their request for a permanent injunction, it does not necessarily follow that a complaint based only upon the oral representation of the clients is so insupportable that Rule 11 sanctions are required.

That is especially so where, as here, appellant had to act quickly in order to respond to his clients' predicament. The Supreme Court has held that a "reasonable inquiry under Rule 11 varies depending on the circumstances of each case ...", observing that "[a]n inquiry that is unreasonable when an attorney has several months to prepare a complaint may be reasonable when he has only a few days....", *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 401, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990), *see Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (the amount of investigation depends on both the time available to investigate and on the probability that more investigation will turn up important evidence). Mr. Green and Ms. Parkman retained appellant when they learned the property was being offered for sale; therefore, it was not unreasonable for appellant to believe that prompt action was called for.

Accordingly, for the reasons stated, we reverse the award of attorneys fees pursuant to Rule 11 entered against appellant.

---

**2.** However, the documentary evidence was used by the court to settle a possible problem under the Dead Man's Statute, an issue not presented in this case. *See Gray v. Gray, supra*, 412 A.2d at 1212.

**3.** Nor does Rule 11 require counsel to engage in "[i]nquiry that is unlikely to produce results...." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). Appellant's clients had no records of their own, and, since they knew that title was in the mother's name, an examination of the deed would not have provided any information that wasn't already known to them.