*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CV-0692 & 15-CV-1043

07/20/2017
FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

JOHN W. BOYD, JR., APPELLANT,

V.

KILPATRICK TOWNSEND & STOCKTON, *et al.*, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CAB-2782-14)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued January 24, 2017                    Decided July 20, 2017)

*Keith Lively*, for appellant.

*Charles Davant IV*, with *John K. Villa*, and *Roy S. Awabdeh*, *Williams & Connolly LLP*, for appellee Kilpatrick Townsend & Stockton, LLP.

*Alan L. Balaran* for appellee Dennis M. Gingold.

Before THOMPSON and MCLEESE, *Associate Judges*, and BELSON, *Senior Judge*.

Opinion for the court by *Senior Judge* BELSON.

Opinion by *Associate Judge* MCLEESE, concurring in part, and dissenting in part, at page 24.

BELSON, *Senior Judge*:  Appellant John W. Boyd, Jr., seeks reversal of trial court orders granting motions to dismiss brought under Superior Court Rule 12 (b)(6) by appellees Kilpatrick Townsend & Stockton, LLP (Kilpatrick Townsend) and Dennis M. Gingold (Gingold).  Appellant argues that the trial court erred by (1) dismissing his claims for unjust enrichment against both appellees as time-barred; (2) dismissing his claim for *quantum meruit* (breach of an implied-in-fact contract)[1] against Gingold as time-barred; and (3) determining that appellant had failed to state facts sufficient to establish a claim for breach of an implied-in-fact contract against Kilpatrick Townsend.

In concluding that appellant's unjust enrichment claims against both appellees and his breach of an implied-in-fact contract claim against Gingold were time-barred, the trial court applied the "last rendition of services" test, which posits that a claim accrues upon a plaintiff's last rendition of services to a defendant.  On

---

[1]  In contrast to the trial court, we discuss *quantum meruit* and breach of an implied-in-fact contract together as breach of an implied-in-fact contract because the factual allegations of the complaint set forth a claim of breach of an implied-in-fact contract.  *See New Econ. Capital, LLC v. New Mkts. Capital Grp.*, 881 A.2d 1087, 1095 (D.C. 2005) ("*Quantum meruit* may refer to an implied contractual or a quasi-contractual duty requiring compensation for services rendered.") (emphasis added) (quoting *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 176 (D.C. 1996)) (internal quotation marks omitted).

appeal, appellant argues that the trial court should not have applied this test, and asserts that the statute of limitations did not begin to run on his claims until the benefit of his services was conferred upon appellees, which, he argues, took place when appellees were awarded attorneys' fees in the underlying case. Under this theory, the aforementioned claims would not be barred by the three-year statutes of limitations for unjust enrichment and breach of an implied-in-fact contract.

We (1) affirm the trial court's dismissal of appellant's claim for breach of an implied-in-fact contract against Gingold as time-barred; (2) affirm the trial court's determination that appellant failed to state a claim for breach of an implied-in-fact contract against Kilpatrick Townsend; (3) vacate the trial court's dismissal of appellant's claims for unjust enrichment against both appellees as time-barred; and (4) remand for further proceedings consistent with this opinion.

**I.**

We summarize the facts as they are stated in appellant's complaint. Appellees Kilpatrick Townsend, an international law firm, and Gingold, a sole

practitioner, represented the Native American plaintiffs in *Cobell v. Salazar*,[2] a class action lawsuit against the United States Department of the Interior for mismanagement of trust funds. In December 2009, the *Cobell* plaintiffs and the plaintiffs in a separate class action lawsuit against the United States Department of Agriculture concerning past discrimination against black farmers, *Pigford v. Vilsack*,[3] reached a joint settlement agreement with the Government. Appellant, who was then President of the National Black Farmers Association, became involved in *Pigford* by lobbying for minority farmers who had missed an earlier filing deadline to be compensated under a consent decree.[4] A second lawsuit was filed on behalf of these late-filers, and through the efforts of appellant and many others, was eventually combined with the other *Cobell* and *Pigford* litigants into a

---

[2] No. 1:96-cv-01285-TFH (D.D.C., filed June 10, 1996) ("*In re Indian Trust Fund Litigation*").

[3] No. 08-mc-0511-PLF (D.D.C., filed Aug. 8, 2008) ("*In re Black Farmers Discrimination Litigation*").

[4] On April 14, 1999, the class members in *Pigford* reached an agreement on the terms of a consent decree with the Government. "Approximately 65,000 individuals" missed the filing deadline to be compensated under the consent decree, giving rise to the second lawsuit. Both the farmers who met the filing deadline and the late-filers were eventually compensated pursuant to the same congressional appropriation bill that compensated the *Cobell* class members.

joint settlement agreement. The settlement agreement compensating the *Cobell* and *Pigford* plaintiffs required funding by a congressional appropriation.

On March 5, 2010, John Loving, a government relations advisor at Kilpatrick Townsend, contacted appellant and requested his assistance in lobbying for the passage of the Claims Resolution Act (CRA), the funding bill for the *Cobell* and *Pigford* plaintiffs. Mr. Loving "asked [appellant] to use his extensive contacts . . . to drum up the necessary support for the . . . legislation." Appellant and Mr. Loving did not discuss appellant's fees or any specific tasks to be performed. Appellant also spoke with Geoffrey Rempel, an accountant the *Cobell* plaintiffs hired, in order to coordinate lobbying efforts.

Soon thereafter, on June 1, 2010, appellant met Messrs. Rempel and Gingold for lunch at the Laughing Man Tavern, a pub in the District of Columbia. Appellant's complaint states that:

> [During that lunch at the Laughing Man Tavern, appellant] specifically told both Defendant Gingold and Mr. Rempel that he expected to be paid for this efforts to secure funding for the *Cobell* settlement. In response, Defendant Gingold encouraged [appellant] to continue working with and for Defendants. Defendant Gingold never indicated to [appellant] at any time at the

> restaurant, or at any subsequent time thereafter, that [appellant] would not be compensated for his efforts. . . . Every time [appellant] raised issues of compensation or the amount of such compensation, Defendant Gingold always indicated to him that compensation should not concern him — clearly indicating to [appellant] that payment would be forthcoming. Indeed, according to Defendant Gingold, the issue of payment was not whether [appellant] would be compensated, but when Eloise Cobell would focus on the amount of compensation for him. (emphasis omitted).

After the lunch meeting, appellant continued to lobby for passage of the CRA, which President Obama signed into law on December 8, 2010. The complaint alleged no further communications between appellant and appellees after the bill was signed.[5]

## II.

After appellant learned that the *Pigford* litigation team did not plan to pay him for the services he allegedly rendered for them concerning the CRA's passage, he filed a lawsuit against them on November 21, 2012, in the United States District

---

[5] Appellant does not allege that he performed any work for appellees after December 8, 2010.

Court for the District of Columbia.[6] On August 2, 2013, the District Court dismissed appellant's lawsuit, having concluded that his allegations of breach of an implied-in-fact contract and *quantum meruit* failed to state a cause of action, as they consisted largely of "naked allegations of verbal promises"[7] and conclusory statements "devoid of factual details."[8]

On May 6, 2014, well after the District Court had dismissed his complaint against the *Pigford* counsel, appellant filed his complaint against appellees in the Superior Court of the District of Columbia. Subsequently, appellees filed motions to dismiss for failure to state a claim upon which relief could be granted under Super. Ct. Civ. R. 12 (b)(6). The trial court granted those motions in separate orders on June 11, 2015.

---

[6] *See* Complaint, *Boyd v. Farrin*, 958 F. Supp. 2d 232 (D.D.C. 2013) (Civ. Case No. 12-01893 (RJL)). Appellant's lawsuit against the *Pigford* litigation team "br[ought] three claims: breach of fiduciary duty, quantum meruit, and breach of contract." *Boyd v. Farrin*, 958 F. Supp. 2d 232, 235 (D.D.C. 2013).

[7] *Id.* at 240.

[8] *Id.* at 241. The District Court also dismissed Boyd's claim of breach of fiduciary duty. *Id.* at 240.

Regarding Gingold's motion to dismiss, the trial court determined that, assuming appellant's allegations were true, he had sufficiently pled claims for unjust enrichment and breach of an implied-in-fact contract. However, the trial court determined that appellant's claims against Gingold were time-barred under the "last rendition of services" test because appellant's work for Gingold had ended, at the latest, on December 8, 2010, when President Obama signed the CRA into law. The trial court noted that appellant had not "delivered a bill to the defendants during the time period he lobbied for the passage of the CRA" or "within a reasonable time after his services ended." Indeed, the court observed, appellant did not demand payment from appellees until April 28, 2014, when his attorney sent a letter demanding payment accompanied by a draft copy of the complaint that was filed in the Superior Court several days later. The court rejected appellant's argument that his claims accrued when appellees received the "benefit of his services" on the date they were awarded attorneys' fees on July 27, 2011.[9]

---

[9] Throughout his complaint, appellant alleged that had he rendered his services to benefit both the *Cobell* class members and appellees. He argued that the benefit of his services was conferred to appellees when they were awarded attorneys' fees on July 27, 2011. Although appellant did not specifically mention July 27, 2011, in any of the counts in his complaint, he repeatedly referred to the "benefit" of his services as being that appellees were awarded attorneys' fees. He

(continued . . .)

Regarding Kilpatrick Townsend's motion to dismiss, the trial court concluded that appellant had presented, as he had regarding Gingold, sufficient facts to state a claim for unjust enrichment against it; however, unlike appellant's claim against Gingold, had not done so for breach of an implied-in-fact contract because appellant had failed to adequately allege that Gingold or anyone else had acted as an authorized representative of Kilpatrick Townsend with the authority to bind it to an agreement. As with Gingold, the trial court concluded that appellant's claim for unjust enrichment against Kilpatrick Townsend was time-barred under the "last rendition of services" test. Appellant filed a timely notice of appeal.

## III.

We address three questions: (1) whether the trial court erred in dismissing appellant's unjust enrichment claims against both appellees as time-barred; (2) whether the trial court erred in dismissing appellant's claim against Gingold for breach of an implied-in-fact contract as time-barred; and (3) whether the trial court

_____

(. . . continued)
did not specifically allege in any of his counts, however, that appellees had promised him that he would be paid for his services when they were awarded attorneys' fees.

erred in dismissing appellant's claim against Kilpatrick Townsend for breach of an implied-in-fact contract, largely on the basis that, contrary to appellant's allegations, appellees did not maintain an agency relationship with one another while working together on *Cobell* that provided Gingold with the authority to bind Kilpatrick Townsend to an agreement with appellant.

We review a dismissal under Super. Ct. Civ. R. 12 (b)(6) *de novo*. *Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016). "Like the trial court, this court accepts all of the allegations in the complaint as true, and must construe all facts and inferences in favor of the plaintiff." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 316 (D.C. 2008). We "[do] not consider matters outside the pleadings unless [we] treat[] the motion as one for summary judgment." *Equal Rights Ctr. v. Props. Int'l*, 110 A.3d 599, 603 (D.C. 2015) (citing *Grimes v. District of Columbia*, 89 A.3d 107, 111 (D.C. 2014)). "[A] complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" such that the court may infer "'that [the] defendant[s are] liable for the misconduct alleged.'" *Poola*, 147 A.3d at 276 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Comer v. Wells Fargo Bank, N.A.*, 108 A.3d 364, 371 (D.C. 2015)). We review *de novo* a question concerning the "'expiration of the statute of limitations,'" which "'is a question of law.'" *Daniels v. Potomac Elec. Power Co.*, 100 A.3d 139, 143 (D.C. 2014)

(quoting *Bailey v. Greenberg*, 516 A.2d 934, 940 (D.C. 1986)). While "the accrual of a cause of action is a question of law," the accrual date is "a question of fact." *Brin v. S.E.W. Inv'rs*, 902 A.2d 784, 800 (D.C. 2006) (citation omitted). We will not disturb a trial court's factual findings "unless they are clearly erroneous." *Crescent Props. v. Inabinet*, 897 A.2d 782, 790 (D.C. 2006) (citation omitted).

# IV.

We turn first to determining whether the trial court erred in holding that appellant's claims for unjust enrichment were time-barred and, if so, when these claims actually accrued. This court reviews *de novo* the trial court's conclusion regarding whether an unjust enrichment has occurred. *Marsden v. District of Columbia*, 142 A.3d 525, 526 (D.C. 2016) (citing *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 254 (D.C. 2005)). An unjust enrichment occurs when "'(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit [without paying] is unjust.'" *Peart v. District of Columbia Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009) (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). While the benefit related to an unjust enrichment is "usually money," that rule is not absolute, and thus it is possible that appellees received the

benefit of appellant's work in another form.  *See Jordan Keys & Jessamy, LLP v. St. Paul Fire and Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005).[10]  The limitations period for an unjust enrichment claim begins to run "when the . . . last service has been rendered *and* compensation has been wrongfully withheld."  *News World Commc'ns, Inc.*, 878 A.2d at 1219 (emphasis added); *id.* at 1223 (citing *Baer v. Chase* in support of application of the last rendition of services test).  *Cf. Baer v. Chase*, 392 F.3d 609, 622-23 (3d Cir. 2004).  *See generally Zic v. Ital. Gov't Travel Office*, 149 F. Supp. 2d 473 (N.D. Ill. 2001) (applying the last rendition of services test).

In *News World Communications*, we expressly did not reach the question of when the statute of limitations for the plaintiff's unjust enrichment claim would have begun to run if she had rendered her last service to the defendant but had not

---

[10]  While the benefit in an unjust enrichment is "'usually money,'" *see Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *Jordan Keys & Jessamy, LLP*, 870 A.2d at 63), nothing in our case law restricts the benefit of an unjust enrichment to being only money.  For instance, we have observed that a property interest can be considered the benefit stemming from an unjust enrichment, see *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980) (observing that an individual can be unjustly enriched, for instance, from "hold[ing] title to property").  Here, in addition to achieving a significant victory for their clients when the CRA was signed into law, the appellees arguably also gained a reputational benefit by being the attorneys of record in such a high-profile case that resulted in the passage of a historic bill.

demanded and subsequently been refused payment. *Id.* at 1225 n.7. There, a representative of the defendant newspaper explicitly told the plaintiff on April 4, 1995, that she would not be paid for her ideas pertaining to a weekly newspaper supplement; however, she did not file suit until July 22, 1998. *Id.* at 1220. We concluded that the statute of limitations for her unjust enrichment claim commenced when her "last service ha[d] been rendered and compensation ha[d] been wrongfully withheld." *Id.* at 1219. However, in this case, appellant did not send appellees an invoice during the time he rendered services for them or in the 40 months that elapsed after President Obama signed the CRA into law but before he filed his lawsuit. Thus, assuming that appellant is entitled to compensation, the question remains of when the withholding of that compensation became unjust.

We note, but need not pass upon, appellant's argument that July 27, 2011, the date on which appellees were awarded attorneys' fees, was the date his unjust enrichment claim accrued.[11]

---

[11] That issue can be folded into the larger fact-bound question of when any enrichment of appellees became unjust, and presented to the jury. We observe that this argument was not properly raised in opposition to appellees' motions to dismiss because appellant's complaint did not specifically allege that either (or both) of appellees promised him he would be paid only after they were awarded their attorneys' fees. *Cf. Dolan v. McQuaide*, No. 1060, 2016 WL 7235627, at *3-

(continued . . .)

There remains the question of what was a "reasonable amount" of time by which appellant should have regarded the fact that appellees did not pay him for his services to be a rejection of any such claim, and the related question of whether or when such a failure ripened into *unjust* enrichment claim of appellees. These questions are complicated by appellant's failure to make any express demand for payment until he sent appellees a draft copy of his complaint in April 2014. They are fact-bound questions that the trial court upon remand must resolve in the

_____

(. . . continued)

4 (Md. Ct. Spec. App. Dec. 14, 2016) (rejecting plaintiff's argument that an unjust enrichment claim accrued once a jointly owned business became profitable). In his complaint, appellant does not explicitly state the time that he expected to be paid; instead, he merely refers to a vague conversation in which Gingold told him that the *Cobell* litigation team would turn to the issue of his compensation once the named plaintiff in *Cobell* decided the amount to which she believed he was entitled. Appellant's alleged work for appellees involved his lobbying for passage of an appropriation bill to fund a settlement agreement entered into by appellees' clients; it was not alleged that at any time his efforts were focused on aiding appellees in obtaining their attorneys' fees. It can be argued that any attorneys' fees that appellees received were a collateral benefit resulting from appellant's work, not its goal. Appellant's central argument is that he conferred a benefit on appellees because his lobbying helped secure passage of the CRA, which was an objective appellees sought for their clients. That suggests that appellees were "enriched" on the day the CRA was signed into law. These are some of the matters to be considered by the fact-finder in connection with appellant's claim of unjust enrichment.

manner we describe below.[12] *See Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 283-85 (D.C. Cir. 2009); *George Wash. Univ. v. District of Columbia*, 563 A.2d 759, 761 (D.C. 1989) (where necessary to enable meaningful appellate review, court of appeals will remand to the trial court for further proceedings when additional findings of fact are needed to resolve a controversy).

Accordingly, we vacate the trial court's grant of appellees' motions to dismiss appellant's claims for unjust enrichment and remand for further proceedings consistent with this opinion. At an appropriate point during those proceedings, and unless other developments arise that obviate the need to do so, the trial court shall have the jury make findings of fact as to the time after appellant last rendered services by which he should reasonably be deemed to have demanded payment for his services, plus the reasonable time thereafter within which appellees should have responded to said demand, and thus determine when appellant's cause of action for *unjust* enrichment accrued. The trial court can then determine whether appellant filed his complaint within the applicable limitations period for unjust enrichment claims. *See* D.C. Code § 12-301 (8) (2012 Repl.);

---

[12] On remand, the trial judge may wish to bifurcate the jury's consideration of the statute of limitations question from its consideration of the merits (if the merits are reached), and have the jury consider these issues separately.

*Boyd v. Kilpatrick Townsend & Stockton, LLP*, 79 F. Supp. 3d 153, 158 n.3 (D.D.C. 2015) (three-year statute of limitations for unjust enrichment claims in the District of Columbia).  If the underlying facts are shown in further proceedings to have been different from those appellant alleged in his complaint, the trial court will have to make reasonable adjustments to the foregoing way of proceeding consistent with this opinion.

This holding is consistent with *News World Communications*.  In that case, we concluded that an unjust enrichment claim accrues "when the plaintiff's last service has been rendered and compensation has been wrongfully withheld." *News World Commc'ns*, 878 A.2d at 1219.  The fact pattern in *News World Communications* contained both a date on which the plaintiff last rendered her services and a subsequent date on which the defendant refused to pay the plaintiff for her work.  Thus, it was appropriate to conclude that under those facts the defendant newspaper's enrichment became unjust and a cause of action accrued when it refused to pay the plaintiff.  Here, in contrast, there was no demand for payment and subsequent refusal to pay, and appellees' enrichment might not be found to have become unjust on the day the CRA was signed into law, not only because appellees may have had a reasonable time to respond before the enrichment became unjust, but also because appellant's complaint alleges that he

still had an expectation on that date that he would be paid sometime later when the named plaintiff in the underlying action decided the amount to compensate him.

## V.

Next, we address the dismissal of appellant's claim for breach of an implied-in-fact contract against Gingold.  We have held that

> 'An implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt.'

*Jordan Keys & Jessamy*, 870 A.2d at 62 (quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993)).  There is an implied-in-fact contract when:  (1) "'valuable services [were] rendered,'" "'(2) for the person sought to be charged,'" "'(3) which services were accepted by the person sought to be charged, used and enjoyed by him or her,'" and "'(4) under such circumstances as reasonably notified the person sought to be charged that the [person rendering the services] expected to be paid by him or her.'"  *Id.* (second alteration in original) (quoting *Vereen*, 623 A.2d at 1193).

Assuming appellant had a colorable claim against Gingold for breach of an implied-in-fact contract, it accrued on December 8, 2010, the day the CRA was signed into law, because his work for appellees was to aid in securing the bill's passage and, on that date, he could have demanded payment.[13] Unlike a claim for unjust enrichment, this claim accrued on December 8, 2010, and appellant was entitled under the contract to be paid on that date. He does not allege that he performed any work for appellees after that date. *See Cunningham & Assocs. v. Dugan*, 909 A.2d 1001, 1002 (D.C. 1996) ("It is a long-established principle of law that fees for services rendered, in the absence of an agreement to the contrary, are due and payable at the time performance is completed *or* of breach by one of the parties.") (emphasis added); *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 830 (D.C.), *cert. denied*, 409 U.S. 1049 (1972).

Although we recognize that appellant may argue in connection with his claim of unjust enrichment that appellees' enrichment did not become *unjust* until the U.S. District Court awarded them attorneys' fees on July 27, 2011, one who claims a simple breach of contract need not show that the enrichment is not unjust.

---

[13] *See, e.g.*, *Pardue v. Ctr. City Consortium Schs. of Archdiocese of Wash., Inc.*, 875 A.2d 669, 679 (D.C. 2005) (payment can be demanded at the time a contract is completed).

In this connection, we note that in appellant's complaint, he made no specific allegation that appellees promised to pay him once they received their attorneys' fees, but instead alleged only that Gingold said that they would address the issue once the named plaintiff decided the appropriate amount to pay appellant. Appellant could have made a claim for the services he had rendered on the day the CRA was signed into law.[14]  However, he did not file his complaint until May 2014, some 41 months later.  Thus, we conclude that the trial court did not err in the way that it applied the "last rendition of services" test to appellant's claim for breach of an implied-in-fact contract against Gingold, and affirm the dismissal of this claim as time-barred.  *See Dolan*, 2016 WL 7235627, at *3-4; *Rohter v. Passarella*, 617 N.E.2d 46, 52 (Ill. App. Ct. 1993) (statute of limitations began to run as soon as plaintiff could have invoiced defendants and then sought relief in court).

---

[14]  Application of the "discovery rule," which appellant argues for in his brief, would not be appropriate, because nothing in appellant's complaint suggests that the alleged injury here was latent or that it required due diligence on appellant's part to discover it.  Under the "discovery" rule, a "cause of action accrues 'when the plaintiff[s] know[] or through the exercise of due diligence should have known of the injury.'"  *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (quoting *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979)).

**VI.**

Next, we address appellant's argument that the trial court erred in dismissing his claim for breach of an implied-in-fact contract against Kilpatrick Townsend on the basis that he had failed to allege adequately that Gingold or anyone else had acted as Kilpatrick Townsend's authorized agent to bind it to an agreement with appellant. Appellant relies principally on appellees' alleged actions as co-counsel in representing the *Cobell* plaintiffs in the underlying litigation against the Department of the Interior, an important part of which consisted of the allegation that Gingold had a lunch meeting with appellant in which Gingold, allegedly acting as both Kilpatrick Townsend's co-counsel and agent, urged appellant to assist the *Cobell* litigation team in achieving its goals. If Gingold had possessed the authority to act as Kilpatrick Townsend's agent, that would arguably have made Kilpatrick Townsend a party to the contract implied-in-fact. Appellant argues that Gingold, as "the actual and apparent agent of Kilpatrick [Townsend]," was authorized to act on behalf of Kilpatrick Townsend, and thus he bound both of them to the agreement to pay appellant for his lobbying services. For several reasons, this argument fails.

First, appellees did not enter into an agency relationship merely by acting as co-counsel in *Cobell*. Despite the facts that appellees worked together on the case and Kilpatrick Townsend allowed Gingold to use some of its office space during the course of the litigation, appellees acted in the service of their clients, not of each other. *See Henderson v. Charles E. Smith Mgmt., Inc.*, 567 A.2d 59, 62 (D.C. 1989) (agency relationship exists where "'one person authorizes another to act on his [or her] behalf subject to his [or her] control, and the other consents to do so.'") (alterations in original) (quoting *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982) (citing *Rose v. Silver*, 394 A.2d 1368, 1371 (D.C. 1978)). Appellant does not provide any legal authority suggesting that co-counsel for a party on a case invariably enters into an agency relationship, and his conclusory allegations offer no plausible reason why attorneys from separate firms or practices who work together to represent a party in a single case should be considered as agents of one another. *See Railan v. Katyal*, 766 A.2d 998, 1011 (D.C. 2001) (party asserting the existence of an agency relationship must offer evidence showing that the purported principal exercised control over the supposed agent). As evidence that appellees maintained an agency relationship, appellant points out that "(1) [d]efendant Gingold worked with [d]efendant Kilpatrick [Townsend] in managing and litigating the *Cobell* matter, (2) [d]efendant Kilpatrick [Townsend] provided Defendant Gingold an office to work from, and (3) both defendants

'micromanaged' the plaintiff's lobbying efforts." These facts do not establish that appellees were in an agency relationship — rather, such facts are some of the hallmarks of a standard relationship between counsel from different practices working together on litigation for the same client. Appellant's contention that attorneys from different practices who act as co-counsel simultaneously enter into an agency relationship also raises obvious and troublesome policy implications.[15]

We also note that other jurisdictions that have decided similar questions regarding agency law have concluded that to establish an agency-style relationship exists it must be clear that, among other factors, "each [party is entitled] to direct and govern the policy [and] conduct of the other member[]" and has "a right to joint control and management of [any] property used in the enterprise." *Thompson*

---

[15] If appellant's argument about what constituted an agency relationship actually represented the state of the law, it would severely misread agency law and could have a chilling effect on the ability and willingness of co-counsel to work together to represent a client. Every time co-counsel entered into a joint representation, they would be concerned about exposing themselves to liability for third-party obligations of which they had no prior knowledge. Here, there is no evidence that appellees (1) agreed to be general partners of one another, (2) formed any type of permanent relationship beyond acting as co-counsel in *Cobell*, or (3) maintained a mutual authority to control one another's behavior or bind one another to contracts. *See Eastbanc, Inc. v. Georgetown Park Assocs. II, LP*, 940 A.2d 996, 1004 (D.C. 2008) (to establish a joint venture, parties must express a mutual "intent to be bound").

*v. Hiter*, 826 N.E.2d 503, 510 (Ill. App. Ct. 2005) (citations omitted); *see Blondell v. Littlepage*, 991 A.2d 80, 91 (Md. 2010) ("'The mere sharing of profits [as co-counsel] is not in itself sufficient to create a partnership.'") (quoting *M. Lit, Inc. v. Berger*, 170 A.2d 303, 306 (Md. 1961)). We perceive no error in the trial court's conclusion that the complaint did not adequately allege that appellees here were in an agency relationship. While appellees collaborated on case strategy and agreed to a profit-sharing plan, appellant's argument that they essentially formed a joint venture based on these acts fails because appellant's complaint did not allege that appellees: (1) retained the ability to control each other's conduct; (2) maintained ownership of one another's business property; (3) indicated in any manner that they intended their professional cooperation to extend beyond litigating *Cobell*; or (4) owed any special duties or obligations to one another that suggested the existence of a joint venture. *See Wash. Inv. Partners of Del., LLC v. Sec. House., K.S.C.C.*, 28 A.2d 566, 578 (D.C. 2011) ("'[M]embers [of a joint venture] must have the intent to form [such a] relationship.'"); *Eastbanc*, 940 A.3d at 1004.

On these bases, we conclude that the trial court did not err in determining that the complaint did not adequately allege that appellees maintained an agency relationship with one another. Accordingly, because Gingold did not possess the authority to bind Kilpatrick Townsend to a contractual obligation, and because

appellant fails to allege any other basis upon which Kilpatrick Townsend breached an implied-in-fact contract with appellant, the trial court did not err in determining that appellant failed to state a claim for breach of an implied-in-fact contract against Kilpatrick Townsend.

Accordingly, we (1) affirm the trial court's dismissal of appellant's claim for breach of an implied-in-fact contract against Gingold as time-barred; (2) affirm the trial court's determination that appellant failed to state a claim for breach of an implied-in-fact contract against Kilpatrick Townsend; (3) vacate the trial court's dismissal of appellant's claims for unjust enrichment against both appellees as time-barred; and (5) remand for further proceedings consistent with this opinion.

*So ordered.*

MCLEESE, *Associate Judge*, concurring in the judgment in part and dissenting in part: Although I agree with the court's decision to vacate the dismissal of Mr. Boyd's claim of unjust enrichment, I would also vacate the dismissal of Mr. Boyd's other claims. I therefore respectfully dissent in part.

As the court notes, a motion to dismiss must be denied as long as the complaint "state[s] a claim to relief that is plausible on its face." *Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016) (internal quotation marks omitted). "If a complaint's factual allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Id.* (internal quotation marks omitted). The trial court dismissed Mr. Boyd's claim of breach of implied-in-fact contract against Kilpatrick Townsend on the ground that Kilpatrick Townsend "was not advised about [Mr. Boyd's] expectation to be paid for his lobbying services." The court affirms that ruling on the somewhat different ground that the complaint did not adequately allege that Kilpatrick Townsend's co-counsel, Mr. Gingold, was acting as an agent for Kilpatrick Townsend. *Ante* at 23. I would vacate the dismissal. The complaint alleges that (1) an employee of Kilpatrick Townsend asked Mr. Boyd to help get congressional funding for a settlement that would benefit Kilpatrick Townsend's clients in the *Cobell* litigation; (2) at various points, Mr. Boyd was given direction by Kilpatrick Townsend, Mr. Gingold, and an accountant also working on the *Cobell* litigation; (3) Mr. Boyd repeatedly included Kilpatrick Townsend in emails reporting on his efforts; (4) Mr. Boyd told Mr. Gingold and the accountant that he expected to paid for his efforts, and he was assured that he would eventually receive such payment; and (5) Kilpatrick Townsend provided an office to Mr. Gingold during the course

of the *Cobell* litigation. In my view, these allegations make it at least plausible either that Kilpatrick Townsend was informed of Mr. Boyd's expectation of payment or that Mr. Gingold was authorized by Kilpatrick Townsend to deal with Mr. Boyd. I would therefore vacate the trial court's ruling that Mr. Boyd failed to state a plausible claim of breach of implied-in-fact contract against Kilpatrick Townsend sufficient to permit the claim to proceed to discovery.

The trial court also dismissed all of Mr. Boyd's claims as barred by the statute of limitations. This court affirms that ruling with respect to Mr. Boyd's claims of quantum meruit and implied-in-fact contract. *Ante* at 2 n.1, 17-19. I would vacate as to those counts. The contention that a claim is barred by the statute of limitations is a defense, and Mr. Boyd's complaint therefore was not required to contain any factual allegations on the topic. *See, e.g.*, *Daniels v. Pepco*, 100 A.3d 139, 143 (D.C. 2014). Moreover, the trial court should not dismiss a claim on statute-of-limitations grounds unless the claim is time-barred on the face of the complaint. *Logan v. LaSalle Bank Nat'l Ass'n.*, 80 A.3d 1014, 1020 (D.C. 2013) (citing cases). The court appears to conclude that Mr. Boyd's claims of quantum meruit and implied-in-fact contract are barred on the face of the complaint because, as a matter of law, those claims accrued in December 2010,

when Mr. Boyd completed his work and therefore could have demanded payment. *Ante* at 17-19. I do not agree.

At the outset, I note that although the court treats Mr. Boyd's quantum-meruit claim as equivalent to a claim of breach of implied-in-fact contract, *ante* at 2 n.1, it is not clear to me that those two claims are equivalent, either in the complaint or in general. *Compare, e.g.*, *New Econ. Capital v. New Markets Capital Gp.*, 881 A.2d 1087, 1095 (D.C. 2005) (breach of implied-in-fact contract is one type of quantum-meruit claim but requires that true contract, with all necessary elements, can be inferred) *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993) (reiterating above, but listing elements of breach of implied-in-fact contract that (a) do not seem to require that true contract can be inferred and (b) seem very similar to elements of unjust enrichment; also, treating unjust enrichment as type of quantum-meruit claim (quasi-contract or contract implied in law)). The precise relationship among Mr. Boyd's claims may merit further consideration on remand. In any event, I will separately discuss quantum meruit and breach of implied-in-fact contract.

It is not clear to me as a matter of law that Mr. Boyd's quantum-meruit claim accrued at the time Mr. Boyd stopped rendering services in December 2010. Mr. Boyd contends that it was understood that he would not be compensated until some point after his services were rendered. Although the court appears to fault Mr. Boyd for failing to include that contention in his complaint, *ante* at 13-14 n.11, Mr. Boyd was not required to address statute-of-limitation issues in his complaint. *Daniels*, 100 A.3d at 143. Moreover, there is authority for the sensible principle that the statute of limitations on a quantum-meruit claim does not begin to run until payment would reasonably be expected. *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 796 (Tex. App. 2007) ("Frazin's services were not of such a nature that there was an implied condition of payment at certain intervals after which limitations would begin to run. Indeed, the record is replete with testimony that Frazin did not expect to be paid until he had worked the entirety of 1998 and Lamajak's profits for that year had been calculated. Frazin's claim is based on Lamajak's failure to pay him after its profits for 1998 were determined. Thus, the earliest date his [quantum meruit] claim could have accrued is January 1, 1999.").

Contrary to the court's suggestion, *ante* at 18, the principle that the statute of limitations on a quantum-meruit claim does not begin to run until payment would reasonably be expected is supported rather than undermined by our decision in

*Cunningham & Assocs. v. Dugan*, 909 A.2d 1001 (1996). In that case we held that a breach-of-contract claim was barred by the statute of limitations, which began to run when all services had been rendered and the plaintiff had billed the defendant for those services. *Id.* at 1002 & n.2. In reaching that conclusion, however, we noted that if there is "an agreement to the contrary," fees for services are not necessarily due at the time performance is completed. *Id.* at 1002. Mr. Boyd's argument is that there was such an agreement in this case, and I see no basis for concluding that Mr. Boyd's contention is foreclosed on the face of the complaint. The two out-of-jurisdiction cases cited by the court also do not support dismissal of Mr. Boyd's quantum-meruit claim. *Dolan v. McQuaide*, No. 1060, 2016 WL 7235627 (Md. Ct. Spec. App. Dec. 14, 2016), is an unjust-enrichment case that went to trial, and the court's definitive adoption of a "last rendition of services" approach is inconsistent with the court's decision in this case to remand the unjust-enrichment count for further inquiry into when any enrichment of Mr. Gingold and Kilpatrick Townsend became unjust. *Ante* at 11-17. *Rohter v. Passarella*, 617 N.E.2d 46 (Ill. App. Ct. 1993), is a quantum-meruit case, but in that case the court relied upon evidence introduced at trial that the prior history between plaintiff and defendant established that plaintiff "was entitled to be paid annually upon completion of his tax services for each tax year. Furthermore, nothing in the

record indicates that plaintiff acted in such a way after that date which would inform defendants that the old rule had changed . . . ." *Id.* at 52.

Finally, it is also not clear to me as a matter of law that Mr. Boyd's claim for breach of implied-in-fact contract accrued at the time Mr. Boyd stopped rendering services in December 2010. "An action for breach of contract generally accrues at the time of the breach." *Wright v. Howard Univ.*, 60 A.3d 749, 751 (D.C. 2013). Given that Mr. Boyd apparently did not demand payment until 2014, and given Mr. Boyd's contention that there was an understanding that payment would be delayed, I do not see any basis for holding as a matter of law that Mr. Gingold and Kilpatrick Townsend breached any implied contractual agreement in December 2010. *See generally, e.g.*, 54 C.J.S. Limitations § 145 (2017 update) ("As a general rule, where a definite liability arises on a day certain, a default at the time creates a cause of action and the statute of limitations begins to run without demand. Likewise where the right has fully accrued except for some demand which is merely a preliminary step to pursuing the remedy, the making of such demand is not necessary to set the statute of limitations running against the obligation. However, where a demand is not merely a request preliminary to a remedy or to the bringing of an action, but is necessary to create a cause of action, the cause of action does not accrue until such a demand has been made, and the

statute runs only from such demand unless the demand is waived or unreasonably delayed.") (citing cases; footnotes omitted); *Autonation, Inc. v. Susi*, 199 So. 3d 456, 459 (Fla. Dist. Ct. App. 2016) ("Where an agreement does not specify the time for payment or provides for an indeterminate or indefinite time, the law implies that payment will be made within a reasonable time.") (internal quotation marks omitted).